UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**NEVIN SHAWVER,**
                    **Plaintiff**

**v.**                                         **Civil Action No.**
                                                        **3:05CV370-J**

**JO ANNE B. BARNHART, Commissioner**
**Social Security Administration**

## **MEMORANDUM OPINION**

This case presents plaintiff Nevin Shawver's challenge to the decision of the Commissioner denying his claim to Supplemental Security Income ("SSI") payments. After examining the materials of record, the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision should be affirmed.

Mr. Shawver was awarded childhood disability benefits based on a 1993 application (at the point when he was ten years old). When he was fourteen, the Commissioner reviewed his case again and determined that there had been insufficient medical improvement, and that he continued to be eligible for childhood disability benefits. The current challenge is to the ALJ opinion of September 2004 finding Mr. Shawver ineligible for benefits. The ALJ found that Mr. Shawver's history of attention deficit hyperactivity disorder, severe learning disability and history of oppositional defiant disorder were severe impairments, but that they did not meet or equal a "Listing." Further, the ALJ found that Mr. Shawver could be expected to make a vocational adjustment to work that exists in significant numbers in the national economy.

Mr. Shawver contends that the Commissioner failed to follow the applicable regulations,

in that the ALJ used the sequential analysis standards applicable to initial claims; Mr. Shawver argues that the proper analysis would be that used for "cessation of benefits," i.e., 20 C.F.R. Sec. 416.994. Significantly, this analysis would require a comparison of status at different times with a demonstration of medical improvement. The Commissioner, on the other hand, argues that when plaintiff attained the age of 18, his "disability redetermination" was appropriately handled as an initial application, because the legal question was whether he qualified for adult SSI payments pursuant to 20 C.F.R. Sec. 416.920.

Title 20 CFR 416.987, which applies explicitly to disability redeterminations in cases such as the present one, provides as follows, in pertinent part:

(a) ......

(2) We may find that you are not now disabled even though we previously found that you were disabled.

(b) What are the rules for age-18 redeterminations? When we redetermine your eligibility, we will use the rules for adults (individuals age 18 or older) who file new applications explained in §§ 416.920©) through (g). We will not use the rule in § 416.920(b) for people who are doing substantial gainful activity, and we will not use the rules in § 416.994 for determining whether disability continues.

Thus, the ALJ accurately applied the regulations by declining to use Section 416.994, treating the issue instead as an initial application for adult SSI benefits. The rules for establishing childhood disability are different from those for establishing adult disability. Consequently, no comparative evaluation or showing of medical improvement was required in this case.

Mr. Shawver next contends that the ALJ erred in conducting his credibility evaluation. One of the reasons given by the ALJ for finding his testimony less than completely credible was that he had failed to pursue treatment for his depression and hyperactivity. Mr. Shawver cites Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989) for the proposition that it is improper

to "chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." In this case, however, the ALJ explicitly noted that Mr. Shawver had *consistently* foregone treatment, even during the time – as a child – when seeking treatment was not dependent on his own judgment, but rather on the need perceived by his mother. The Court finds no error in the ALJ's reliance on this history.

Finally, Mr. Shawver complains that the ALJ "provided no rationale" for rejecting as controlling the Global Assessment of Functioning of 50 recorded in 2002. In fact, the ALJ explicitly noted that he declined to accord "controlling weight" to the GAF scores because of the wide disparity in ratings in the course of only six days.

Plaintiff further argues that a GAF of "50" is "incompatible with substantial gainful activity. According to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV"), Axis V's "Global Assessment of Functioning" scale considers "psychological, social, and occupational functioning on a hypothetical continuumof mental health-illness." DSM-IV at 32. The range 41-50 is described as appropriate for "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." The range of 51-60 is described as appropriate for "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."

Even leaving aside for a moment the principle that disability is a legal decision, not a medical decision, it is readily apparent that the GAF, standing alone, is a poor tool for

3

determining ability to engage in substantial gainful employment. One reason is that, "occupational functioning" is but one of three fields considering in assessing the GAF. Another problem with using it as a tool for determining disability is that any system that seeks to compress all psychiatric and psychological considerations into a scale of one to one hundred is necessarily approximate, subjective, and subject to considerable variation in interpretation even among experts who agree with one another about a patient's degree of impairment in any specific area. Finally, it must be noted that a particular GAF range is considered appropriate for several alternative reasons; some of the factors that might result in a low GAF would be largely irrelevant to occupational capacity (for example, suicidal ideation), and it is equally clear that someone with a higher GAF might, in fact, have symptoms that severely interfered with the ability to work (for example, conflicts with co-workers).

Consequently, while the GAF may represent a single piece of information to be considered in a disability inquiry, it cannot substitute for specific information about particular capabilities and characteristics. It necessarily follows that where there is specific information available, vacation of a decision solely on the basis of a GAF number is inappropriate.

In this case, the ALJ declined to accord "controlling" weight to the GAF scores. Instead, consistent with the foregoing analysis, the ALJ considered the specific information available and did not base his decision solely on the basis of a GAF number. The Court finds no error in that analysis.

If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Jones v. Secretary, 945 F.2d 1365 (6th Cir. 1991).  The Court's obligation to affirm in such a case exists regardless of whether we would resolve the disputed issues of fact differently, and regardless of whether there exists substantial evidence to support the opposite conclusion.  Stanley v. Secretary, 39 F.3d 115 (6th Cir. 1994),  Tyra v. Secretary, 896 F.2d 1024 (6th Cir. 1990), Mullen v Brown, 800 F.2d 535, 545 (6th Cir. 1986).

      The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Mullen v. Bowen, 800 F.2d 535, 545 (6 th Cir.1986). Significantly, under this standard, this Court is not to resolve conflicts in evidence and may not decide questions of credibility. See  Garner v. Heckler, 745 F.2d 383, 387-88 (6th Cir.1984).

       The ALJ identified specific information in the record (IQ scores, treatment records, counseling notes, etc.) that supported his conclusion that there are a substantial number of jobs that Mr. Shawver could perform.  As substantial evidence supports the decision, and as no legal error has been identified, the Court must affirm the decision.